RENDERED:  JULY 24, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1225-ME

T.N.D.                                                                          APPELLANT

|       | APPEAL FROM CHRISTIAN CIRCUIT COURT |
|-------|-------------------------------------|
| v.    | HONORABLE KATHERINE DEMPS, JUDGE    |
|       | ACTION NO. 24-J-00256-002           |

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.D.; AND
C.D., A MINOR CHILD                                                             APPELLEES

OPINION AND ORDER
DISMISSING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND MOYNAHAN, JUDGES.

JONES, A., JUDGE:  This appeal presents a question not previously addressed by Kentucky's appellate courts: whether the procedures set forth in *Anders v. California*, 386 U.S. 738 (1967), and extended to termination of parental rights appeals in *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky.

App. 2012), apply to appeals arising from dependency, neglect, and abuse ("DNA") proceedings under KRS[1] Chapter 620.

After reviewing the origins and purpose of *Anders*, the rationale underlying *A.C.*, and the significant distinctions between termination proceedings and DNA actions, we conclude that they do not. Accordingly, we hold that the *Anders* procedures adopted in *A.C.* are limited to termination-of-parental-rights appeals and do not apply to DNA appeals.

Because T.N.D. ("Mother") has not identified any claim of error for review after being afforded an opportunity to do so, and because *Anders* does not require this Court to independently review the record in a DNA appeal, we grant counsel's motion to withdraw, strike the *Anders* brief, and dismiss the appeal.

## I. BACKGROUND

This appeal arises from a DNA action filed pursuant to KRS 620.070 on behalf of C.D., a minor child. Following adjudication and disposition proceedings, the Christian Circuit Court, Family Division ("family court"), determined that C.D. was an abused or neglected child and ordered that C.D. remain committed to the custody of the Cabinet for Health and Family Services ("Cabinet"). The family court further directed Mother to cooperate with the

---

[1] Kentucky Revised Statutes.

Cabinet and participate in any treatment or social service programs recommended by the Cabinet.

Mother, through her court-appointed counsel, Dianna Riddick, filed a notice of appeal from the family court's orders on September 26, 2025.[2] Thereafter, Counsel Riddick filed a motion to withdraw stating that after reviewing the entire record, she was unable to identify any nonfrivolous grounds upon which to challenge the family court's orders. She also filed an *Anders* brief pursuant to *A.C.* Upon review, the Court ordered Counsel Riddick's motion to withdraw be passed to the merits panel and instructed Mother that she had thirty days to file a brief of her own choosing, raising any issues that she deemed meritorious. Mother did not file a brief or take any other action in the appeal. The Appellees likewise elected not to file a responsive brief.

Accordingly, the matter now stands submitted for consideration of counsel's motion to withdraw and the threshold question of whether the *Anders* procedures recognized in *A.C.* apply to appeals arising from DNA proceedings.

---

[2] The family court appointed Counsel Riddick to represent Mother in the DNA proceedings pursuant to KRS 620.100(1)(b). It provides: "The court shall appoint separate counsel for the parent who exercises custodial control or supervision if the parent is unable to afford counsel pursuant to KRS Chapter 31."

## II. ANALYSIS

### A. Historical background of Anders and A.C.

In *Anders*, the United States Supreme Court addressed the obligations of court-appointed counsel who concludes that a criminal defendant's first appeal as a matter of right presents no nonfrivolous grounds for relief. The Court held that counsel may seek leave to withdraw only after conducting a conscientious examination of the record and filing a brief identifying anything in the record that might arguably support the appeal. The reviewing court must then independently examine the record to determine whether the appeal is wholly frivolous before permitting counsel to withdraw. *Anders*, 386 U.S. at 744.

The Supreme Court later clarified that the procedures established in *Anders* are not constitutionally required in every proceeding in which counsel has been appointed. Rather, *Anders* created a prophylactic framework designed to protect a litigant's preexisting constitutional right to counsel on a first appeal as a matter of right. *Pennsylvania v. Finley*, 481 U.S. 551, 554-55 (1987) ("*Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel.").

Kentucky adopted the *Anders* procedures in criminal appeals through *Fite v. Commonwealth*, 469 S.W.2d 357 (Ky. 1971). For many years, however, Kentucky appellate courts did not address whether *Anders* should be extended

beyond the criminal context. That question was answered in *A.C.*, wherein this Court considered whether *Anders* should apply to appeals involving the involuntary termination of parental rights. In concluding that it should, the Court emphasized both the parent's statutory right to counsel under KRS 625.080(3) and the extraordinary nature of termination proceedings. The Court observed that termination proceedings permanently sever the parent-child relationship, implicate one of the most fundamental liberty interests recognized by law, require strict compliance with statutory requirements, and must be supported by clear and convincing evidence. *A.C.*, 362 S.W.3d at 365-71.

Balancing those considerations against the burdens imposed by *Anders* review, the Court concluded that the procedures established in *Anders* should be extended to termination-of-parental-rights appeals. Accordingly, *A.C.* held that when appointed counsel in a termination case determines that an appeal presents no meritorious grounds for relief, counsel may file an *Anders* brief and seek leave to withdraw, thereby triggering an independent review of the record by the appellate court. 362 S.W.3d at 370-72.

The question now before us is whether the reasoning of *A.C.* should be extended further to encompass appeals arising from DNA proceedings under KRS Chapter 620.

### B. DNA proceedings differ fundamentally from termination proceedings.

There is no question that DNA proceedings implicate important parental interests. Parents possess a fundamental liberty interest in the care, custody, and control of their children. *Cabinet for Health and Fam. Servs. v. K.S.*, 610 S.W.3d 205, 214 (Ky. 2020). Consistent with that principle, KRS 620.100(1)(b) requires the appointment of counsel for indigent parents in DNA proceedings.

In several respects, DNA proceedings resemble termination proceedings. Both arise from allegations concerning the welfare of a child. Both may result in court-ordered limitations upon a parent's custodial rights. Both implicate a parent's liberty interest in the care and custody of his or her child. And in both proceedings, the General Assembly has provided for the appointment of counsel to indigent parents. The similarities, however, end there.

Most significantly, a DNA proceeding cannot permanently sever the parent-child relationship. While a family court may impose a variety of dispositional remedies designed to protect a child, including temporary removal from parental custody, the purpose of a DNA action is not to permanently terminate parental rights. Rather, such proceedings remain subject to continuing review and modification by the family court and, in many cases, are structured toward reunification of the family when doing so can be accomplished safely.

Termination proceedings are fundamentally different. A judgment terminating parental rights permanently and irrevocably extinguishes the legal relationship between parent and child. Once terminated, the parent-child relationship cannot be restored through subsequent compliance with a case plan, participation in services, or improvement in circumstances. In large part, the permanent severance of the parent-child relationship and the magnitude of the liberty interest at stake, drove our decision in *A.C.*

An additional distinction reinforces this conclusion. DNA allegations must be proven by a preponderance of the evidence. KRS 620.100(3). By contrast, termination of parental rights requires proof by clear and convincing evidence. KRS 625.090(1). The proof required for court action in DNA cases is significantly less than that required for termination of parental rights.

### C. We decline to extend Anders *to DNA appeals.*

Having examined the significant distinctions between DNA proceedings and termination proceedings, we now turn to whether the *Anders* procedures adopted in *A.C.* should be extended to appeals arising under KRS Chapter 620. We conclude they should not.

As an initial matter, we do not read *A.C.* as establishing a categorical rule that *Anders* applies whenever a litigant has a statutory right to appointed counsel. To the contrary, *A.C.* repeatedly emphasized the unique nature of

-7-

termination proceedings, the permanent severance of the parent-child relationship, the heightened burden of proof, and the extraordinary liberty interests at stake. Those considerations justified extending *Anders* beyond its traditional criminal-law origins and imposing upon both appointed counsel and the appellate courts the substantial obligations attendant to *Anders* review.

The existence of appointed counsel, standing alone, however, cannot be dispositive. Kentucky law provides for the appointment of counsel in other proceedings, yet *Anders* review is not required in every appeal arising from those proceedings. Indeed, while counsel may be appointed in post-conviction proceedings brought pursuant to RCr[3] 11.42, Kentucky courts do not employ *Anders* procedures in appeals from those proceedings. Thus, the mere existence of a statutory right to counsel does not automatically trigger *Anders* review.

Nor does the rationale underlying *A.C.* support such an extension. The procedures established in *Anders* require appointed counsel to conduct a comprehensive review of the record, identify any potentially arguable issues, and explain why those issues lack merit. They further require the appellate court to independently review the entire record regardless of whether the appellant identifies any claim of error. As this Court is well aware, these obligations are substantial. Nevertheless, in *A.C.* we concluded that such burdens were justified

---

[3] Kentucky Rules of Criminal Procedure.

because termination proceedings involve the permanent and irrevocable destruction of the parent-child relationship.

DNA proceedings do not present the same concerns. While such proceedings may temporarily disrupt the parent-child relationship and may result in restrictions upon parental custody, they do not permanently terminate parental rights. In many cases, parents may regain custody through compliance with court orders, participation in treatment programs, and successful completion of case plans. And, in many other cases, parents retain physical custody of their children so long as they cooperate with the Cabinet and with any related court orders. The family court retains continuing authority to review and modify its orders as circumstances change. Consequently, the balance struck in *A.C.* does not support extending *Anders* review to DNA appeals.

Nor does our holding deprive parents of meaningful appellate review. If appointed counsel identifies a nonfrivolous basis for appeal, counsel remains ethically obligated to pursue that appeal on the parent's behalf should the parent so desire. If counsel concludes that no such basis exists and is permitted to withdraw, the parent remains free to pursue an appeal *pro se*. Kentucky appellate courts routinely review *pro se* appeals and grant relief when warranted. Our holding merely recognizes that, unlike termination proceedings, DNA appeals do not

require the extraordinary safeguard of an independent *Anders* review by the appellate court absent any claim of error advanced by either counsel or the parent.

Accordingly, we hold that the *Anders* procedures adopted in *A.C.* do not apply to appeals arising from DNA proceedings under KRS Chapter 620.

### D. *Procedure in DNA Appeals.*

Because *Anders* does not apply to DNA appeals, it is appropriate to clarify the procedure to follow when appointed counsel concludes that an appeal presents no nonfrivolous grounds for relief. If counsel concludes that no nonfrivolous issues exist and the client still desires to appeal, counsel should assist the client in filing a notice of appeal and then seek leave to withdraw. The motion should certify that counsel has reviewed the record but has been unable to identify any nonfrivolous grounds for appeal. Counsel should include the client in the certificate of service. If the Court allows counsel to withdraw, the appealing party may file a brief *pro se*. Absent a properly filed brief identifying some alleged error, the appeal shall proceed in the same manner as any other appeal in which the appellant has failed to file a brief.

### E. *Application to this case.*

In the present case, Counsel Riddick moved to withdraw after concluding that no nonfrivolous grounds existed upon which to challenge the family court's orders. Consistent with the procedure described above, Mother was

-10-

provided notice of counsel's motion and afforded thirty days to file a brief identifying any issues she wished this Court to review. Mother did not file a brief or take any other action in the appeal.

Because *Anders* does not apply to DNA appeals, we decline to conduct an independent review of the record. We therefore grant Counsel Riddick's motion to withdraw and strike the *Anders* brief filed in this matter. With the *Anders* brief stricken, there is no appellant brief before this Court. It is well-established that "an appeal may be dismissed when the appellant fails to file a brief in support of his [or her] position." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979) (citations omitted); *Callihan v. Callihan*, 528 S.W.3d 353, 356 (Ky. App. 2017) (citing *Milby*, 580 S.W.2d at 727). Accordingly, dismissal of this appeal is appropriate.

## III. ORDER

**IT IS HEREBY ORDERED** as follows:

1. Counsel Riddick's motion to withdraw is **GRANTED**;

2. The Clerk of the Kentucky Court of Appeals is hereby ordered to **STRIKE** the *Anders* brief filed on Mother's behalf from the record; and

3. This appeal is **DISMISSED** for Mother's failure to file an appellant brief.

ALL CONCUR.

ENTERED: ____07/24/2026____

HON. ALLISON E. JONES
JUDGE, COURT OF APPEALS